UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

CHRISTINE F.[1],                              )
                                             )
            Plaintiff,                       )
                                             )
      v.                                     )      CIVIL NO. 2:19cv359
                                             )
ANDREW M. SAUL,                              )
Commissioner of Social Security,             )
                                             )
            Defendant.                       )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB) as provided for in the Social Security Act.  Section 205(g) of the Act

provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the

transcript of the record including the evidence upon which the findings and decision complained

of are based.  The court shall have the power to enter, upon the pleadings and transcript of the

record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with

or without remanding the case for a rehearing."  It also provides, "[t]he findings of the

[Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42

U.S.C. §405(g).

The law provides that an applicant for SSI must establish an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to last for a continuous period of no less than 12 months. . . ."

_____

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act

through June 30, 2020.

2. The claimant has not engaged in substantial gainful activity since April 19, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*)

3. The claimant has the following severe impairments: lumbar stenosis, radiculopathies, disc herniation, and post-laminectomy syndrome; status post left ankle and foot derangement; right carpal tunnel syndrome; and, multilevel cervical spondylosis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 40-4.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently. The claimant can stand and walk for 2 hours in an eight-hour day, and sit about 6 hours in an eight-hour day.

6. The claimant is capable of performing past relevant work as an administrative secretary (DOT #169.167-014). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 19, 2016, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 13- 20 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits.

The ALJ's decision became the final agency decision when the Appeals Council denied review.

This appeal followed.

Plaintiff  filed her opening brief on January 14, 2020.  On February 18, 2020 the

defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff

replied on March 17, 2020. Upon full review of the record in this cause, this court is of the view

that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 4 was the determinative inquiry.

Between October 2014 and November 2015, Plaintiff received chiropractic care from N. Trimonoli, D.C. for left sciatica with low back pain, cervical degenerative disc disease and thoracic scoliosis. (AR 493.)

During a pain management evaluation in October 2015, Plaintiff complained of low back pain and neck pain. (AR 519.) She indicated that the pain was a dull, aching sensation with an occasional sharp, stabbing component that spread across the lower back and into the hips and buttocks bilaterally. *Id*. Medications, injections, physical therapy and chiropractic care did not provide her long-term relief. (AR 520.) D. Cha, M.D. diagnosed pain in lumbar spine and sciatica

and ordered diagnostic imaging. (AR 522.)

A lumbar MRI from October 2015 revealed left paracentral disc protrusion at L4-L5 with foraminal extension resulting in mild/moderate thecal sac stenosis and severe left subarticular recess stenosis impinging on the traversing left L5 nerve root and mild/moderate left paracentral L1-L2 disc extrusion. (AR 514.) A cervical MRI from November 2015 showed multilevel cervical spondylosis, most pronounced at C6-7.

In November and December 2015, Plaintiff received lumbar epidural injections. (AR 529, 533.) During a neurological consultation in December 2015, Plaintiff complained of pain in L5 distribution on the left side. (AR 437.) A lumbar MRI showed herniating disks on the left side at L4-L5. *Id*. A. Mehta, M.D. recommended left-sided L4-L5 discectomy and decompression. (AR 437.) In April 2016, Plaintiff underwent left-sided L4-L5 hemilaminectomy and discectomy. (AR 443) During a follow-up in May 2016, Plaintiff complained of pain in her right side. (AR 454.) She described falling down some stairs. *Id*. A lumbar CT from May 2016 showed multiple displaced and nondisplaced fractures involving the L3, L4 and L5 transverse processes and left-sided laminectomy at L4-L5 level. (AR 412, 454.) Dr. Mehta recommended a 5-pound lifting limit. (AR 455.)

During a pain management follow-up in June 2016, Plaintiff continued to complain of low back pain. (AR 538.) She exhibited moderate to severe pain with flexion and extension of the lumbar spine. (AR 538.) Dr. Cha recommended her to follow up with her spine surgeon. (AR 539.)

In July 2016, Plaintiff sought emergency care for low back pain radiating down her left leg. (AR 415.) The examining physician diagnosed back strain and ordered a lumbar MRI. (AR

420, 422.) A lumbar MRI revealed postoperative changes from left L4-L5 laminotomy, posterior paraspinal soft tissue edema, a large left paracentral L4-L5 uncontained disc extrusion effacing the left lateral recess and severely impinging upon the traversing left L5 nerve root. (AR 423.) In July 2016, Plaintiff underwent repeat left-sided L4-L5 laminectomy and discectomy for recurrent disk herniation. (AR 472.)

In September 2016, Plaintiff stated that her leg pain had improved following the surgery, but she continued to complain of back pain. (AR 478.) Dr. Mehta prescribed muscle relaxants. (AR 478.)

In December 2016, Plaintiff presented to North Point Orthopedics for evaluation of back and right hip pain. (AR 654.) She described a history of low back pain, bilateral buttock pain and bilateral groin pain for the past two years. *Id*. She also complained of chronic numbness and tingling in her feet. *Id*. On physical examination, she exhibited limited lumbar range of motion. (AR 656.) G. McComis, MD diagnosed low back pain, pelvic-hip osteoarthritis and spinal stenosis lumbar. *Id*.

Between October 2016 and December 2016, Plaintiff attended 18 physical therapy sessions for lumbar degeneration. (AR 548-71.) In December 2016, Plaintiff stated that she had to constantly move into a different position due to back pain. (AR 548.) She indicated that she could sit for 10 minutes at a time and stand for 10 minutes at a time. (AR 548.) The examining physical therapist opined that Plaintiff's rehabilitation potential was poor. (AR 548.)

A bilateral hip MRI from December 2016 revealed signal abnormality in the lower lumbar paravertebral musculature and bone marrow edema in the L4 and L5 vertebral bodies likely reactive from underlying degenerative disc disease. (AR 646.)

During a pain management follow-up in January 2017, Plaintiff complained of low back pain and neck pain. (AR 648.) She indicated that her back pain had worsened despite the two lumbar surgeries and conservative measures. *Id.* Dr. Cha diagnosed lumbar spondylosis, lumbar degenerative disc disease and spinal stenosis and recommended lumbar medial branch block on the right-sided lumbar spine. (AR 649.) In January 2017, she underwent diagnostic lumbar medial branch block. (AR 650).

During an orthopedic follow-up in January 2017, Plaintiff complained of bilateral carpal tunnel pain. (AR 658.) She complained of right-hand pain with numbness and tingling in fingers. *Id*. She described dropping objects and stated that braces and medication did not alleviate her symptoms. *Id*. She exhibited positive Tinel's in the right hand and decreased sensation over the thumb to her fourth finger. (AR 659.) Dr. McComis diagnosed right carpal tunnel syndrome and recommended a right-hand injection. (AR 660.)

In May 2017, Plaintiff underwent lumbar diagnostic medial branch block of right L3, L4, L5 dorsal ramus for the facet joints of L4-5 and L5-S1 under fluoroscopy. (AR 783.) In August 2017, Plaintiff underwent fluoroscopically guided transforaminal epidural steroid injection, bilateral L4. (AR 760.) In October 2017, Plaintiff underwent bilateral L5 transforaminal epidural steroid injection. (AR 746.)

During a neurosurgery follow-up in March 2017, Plaintiff complained of back and hip pain. (AR 652.) Dr. Mehta recommended another round of facet joint injections. *Id.* In March 2017, Plaintiff underwent fluoroscopic guided right L2, L3, L4 and L5 medial branch blocks. (AR 796.)

During an orthopedic follow up in November 2017, Plaintiff continued to complain of

right hand pain, swelling and numbness. (AR 661.) She stated that the injection provided relief only for a couple of months. *Id*. Her right hand showed positive Tinel's and she has decreased sensation over the tip of her thumb, index and long fingers. (AR 662.) Dr. McComis recommended right carpal tunnel release. (AR 662.)

Between January 2017 and April 2018, Plaintiff was treated at Midwest Interventional Spine Specialists for post laminectomy syndrome, sacroiliitis, lumbar radiculopathy, myalgia, spinal stenosis of lumbar region and cervical disc degeneration at C6-C7 level. (AR 702- 818.) Her symptoms included low back pain, neck pain and right hip pain. (AR 702, 703, 708, 714, 720, 729, 735, 741, 749, 754, 762, 768, 769, 774, 780, 785, 791, 798, 802, 807.) Clinical findings were identified as painful range of motion in lumbar spine and cervical spine tenderness. (AR 703, 709, 721, 730, 736, 750, 775, 781, 786, 792, 799, 803, 808.)

In January 2018, Plaintiff received a right sacroiliac joint intra-articular injection with periarticular and intra-articular injection. (AR 726.)

At the hearing, Plaintiff testified that she could not perform a full-time job due to chronic pain in her neck, lower back and legs and carpal tunnel syndrome. (AR 121.) The pain in her back radiated down her hips and legs. (AR 125.) On an average, her pain was a 7 to 8 on a scale of 1 to 10. (AR 128.) She could lift up to 10 pounds at a time, stand for 10 minutes a time before changing positions, sit for 20 minutes at a time before changing positions and walk about a block at a time. (AR 121.) Her symptoms were worst in the morning. (AR 133.) She underwent two lumbar discectomies. (AR 125.) She underwent left carpal tunnel release in 2011. (AR 126.) She continued to experience pain in her right hand and dropped objects frequently. (AR 127, 134.) In addition to her physical ailments, she also suffered from depression and was prescribed Lamictal

and Paxil. (AR 122, 136.) She had difficulty concentrating and could concentrate for only a couple of minutes at a time. (AR 136.)

The ALJ found as follows: Plaintiff had the severe impairments of lumbar stenosis, radiculopathies, disc herniation, and post-laminectomy syndrome; status post left ankle and foot derangement; right carpal tunnel syndrome; and multilevel cervical spondylosis. (AR 13.) Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except that she could lift, carry, push and pull 10 pounds occasionally and less than 10 pounds frequently and she could stand and walk for 2 hours in an eight-hour day and sit about 6 hours in an eight-hour day. (AR 16.) The ALJ found that Plaintiff was capable of performing her past relevant work as an administrative secretary. (AR 20.)

In support of remand Plaintiff first argues that the ALJ failed to build an accurate and logical bridge from the evidence to his RFC assessment. As noted, the ALJ found that Plaintiff had the RFC to perform sedentary work. (AR 16.) Plaintiff, however, contends that the ALJ failed to set forth a supported rationale for his RFC findings.

The Seventh Circuit has mandated that an ALJ must identify some record basis to support his functional capacity finding. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *accord Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012). The failure of the ALJ to set forth a supported record basis for his functional capacity finding and provide a bridge from the record evidence to his conclusions compels remand. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998) ("[the ALJ's] opinion fails to build a bridge from the evidence to the conclusion and is thus analytically inadequate – in a word, unreasoned – we cannot uphold his decision.").

Plaintiff notes that the ALJ assigned "little weight" to the opinions of the non-examining

State agency medical consultants R. Fife, M.D. and J. Corcoran, M.D., who limited Plaintiff to light work with additional postural limitations. (AR 19, 153-54, 167.) The ALJ rejected these opinions and determined that Plaintiff was limited to sedentary work. (AR 16.) Once the ALJ found that Drs. Fife's and Dr. Corcoran's opinions (the only physicians to opine regarding Plaintiff's functional limits) did not account for Plaintiff's functional restrictions and that she was more significantly limited than what the State agency physicians found, the ALJ faced an evidentiary deficit. *Suide v. Astrue*, 371 Fed. Appx. 684, 689-90 (7th Cir. 2010) (When the ALJ rejects all physician opinion evidence, an evidentiary deficit exists.) The ALJ found that limitations from carpal tunnel reduced the amount of weight that Plaintiff could lift and carry. (AR 19.) But the ALJ did not explain how he determined that, given the limiting effects of carpal tunnel syndrome, Plaintiff could lift and carry up to ten pounds as opposed to five pounds, four pounds, three pounds, etc. SSR 96-8p at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts."); *Briscoe Ex Rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (reversing the ALJ's denial of benefits for failure to provide a narrative discussion).

The ALJ also did not explain why, if his focus was on Plaintiff's carpal tunnel syndrome, he did not find any manipulative restrictions. (AR 16.) *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (ALJ is required to build a "logical bridge" between the evidence and her conclusions). An ALJ is required to explain why he rejected certain alleged limitations and accepted others. *Villano v. Astrue*, 556 F.3d 558, 562-63 (7th Cir. 2009) The ALJ did not explain why carpal tunnel affected Plaintiff's ability to lift and carry but not her ability to handle or finger. The record documents Plaintiff's manipulative limitations: In January 2017, Plaintiff presented to North

Point Orthopedics for evaluation and treatment for bilateral carpal tunnel pain. (AR 658.) She complained of right-hand pain with numbness and tingling in fingers. *Id*. She described dropping objects and stated that braces and medication did not alleviate her symptoms. *Id*. She exhibited positive Tinel's in the right hand and decreased sensation over the thumb to her fourth finger. (AR 659.) Dr. McComis diagnosed right carpal tunnel syndrome and recommended a right-hand injection. (AR 660.) During an orthopedic follow up in November 2017, Plaintiff continued to complain of right-hand pain, swelling and numbness. (AR 661.) She stated that the injection provided relief only for a couple of months. *Id*. Her right hand showed positive Tinel's and she has decreased sensation over the tip of her thumb, index and long fingers. (AR 662.) Dr. McComis recommended right carpal tunnel release. (AR 662.)

In a function report from January 2017, Plaintiff described experiencing difficulties dressing herself, caring for her hair and shaving. (AR 359.) She could only lift up to 5 pounds. (AR 363.) She explained that her conditions affected her ability to lift and use her hands. (AR 363.)

During the hearing, Plaintiff testified that she suffered from carpal tunnel syndrome and dropped objects frequently because her hands were no longer sturdy. (AR 121, 135.) Plaintiff argues that this evidence could have reasonably supported manipulative limitations as well as lifting/carrying restrictions. Plaintiff claims that this error was not harmless, for the ALJ found that Plaintiff could perform past work as an administrative secretary which required frequent handling/fingering. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir.2010) (an error is harmless only "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original

opinion failed to marshal that support," because remanding would be "a waste of time.").

Plaintiff testified that she could not remain in one position for very long and was constantly changing positions. (AR 121.) However, the ALJ rejected Plaintiff's need to change positions because no doctor recommended that she do this and because she received conservative care. (AR 19.) But, the ALJ offered no explanation as to why any medical record would have reflected that Plaintiff should change positions because remaining in one position caused pain. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("We cannot uphold an administrative decision . . . that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome"). Plaintiff argues that it would seem preposterous that a doctor would actually put in his treatment recommendations that a claimant should sit down if standing made her pain worse or to stand if sitting made her pain worse. Plaintiff's physicians knew that she was unemployed. Plaintiff was not, therefore, required to remain in a particular position for any period of the day and could have stood at will, sat at will, etc. *Eskew v. Astrue*, 462 Fed.Appx. 613, 616 (7th Cir.2011) ("The absence of major work restrictions in Eskew's medical records does not illuminate the question of her credibility—she was after all unemployed throughout the time in question.")

Plaintiff contends that the ALJ did not explain how conservative care was related to Plaintiff's need to alternate positions. *Terry*, 580 F.3d at 475. The ALJ appeared to suggest that it would be reasonable for Plaintiff to move around a lot if she underwent several invasive procedures or surgery. Plaintiff argues that this was an unreasonable independent medical conclusion that was predicated on speculation. *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (ALJ cannot make own inference about level of treatment without record support); SSR

86-8 (An ALJ is not permitted to substitute "presumptions, speculations and suppositions" for evidence.) Again, Plaintiff asserts that this error was not harmless, for Plaintiff may not have been able to perform past relevant work if she needed to frequently alternate between sitting/standing/walking, and the ALJ made no alternative step five finding. *Spiva*, 628 F.3d 353.

Plaintiff alleged that she used a back brace and a wrist brace. (AR 364.) The ALJ acknowledged this but found that neither of these braces were prescribed. (AR 19.) However, the ALJ erroneously concluded that Plaintiff would have needed a prescription for either brace, when she could have gone to any local pharmacy and bought the braces over the counter. *Parker*, 597 F.3d 922 (Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription.) This is pertinent because the use of a wrist brace could limit Plaintiff's ability to finger/handle and, as stated before, if Plaintiff could not frequently finger and handle, she would be precluded from competitive employment.

In response, to Plaintiff's arguments regarding the logical bridge, the Commissioner argues that the ALJ properly articulated an RFC finding based on substantial evidence. The Commissioner contends that the lifting restriction in the RFC adequately accommodated Plaintiff's carpal tunnel syndrome. However, as Plaintiff notes, carpal tunnel syndrome causes numbness, tingling, burning, pain, weakness and clumsiness in one's hands, which would likely result in manipulative limitations. Plaintiff's treatment notes consistently document her difficulties with manipulation: during an orthopedic visit in January 2017, Plaintiff complained of right-hand pain, numbness and tingling, and indicated that she was dropping objects and stated that braces and medication did not alleviate her symptoms. (AR 658.) She exhibited positive

Tinel's in the right hand and decreased sensation over the thumb to her fourth finger. (AR 659.)

In November 2017, Plaintiff continued to complain of right-hand pain, swelling and numbness.

(AR 661.) Her right hand showed positive Tinel's and she had decreased sensation over the tip of

her thumb, index and long fingers. (AR 662.) In a function report from January 2017, Plaintiff

described experiencing difficulties dressing herself, caring for her hair and shaving. (AR 359.)

She could only lift up to 5 pounds. (AR 363.) She explained that her conditions affected her

ability to lift and use her hands. (AR 363.) During the hearing, Plaintiff testified that she suffered

from carpal tunnel syndrome and dropped objects frequently because her hands were no longer

sturdy. (AR 121, 135.)

Given this evidence, the ALJ was required to address why he did not find that Plaintiff

had manipulative limitations. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (ALJ is required

to build a "logical bridge" between the evidence and her conclusions). The ALJ's error in failing

to find manipulative limits was not harmless, for the ALJ found that Plaintiff could perform past

work as an administrative secretary which required frequent handling/fingering. If she were

limited to less than frequent handling/fingering, she could not do her past work. *Spiva v. Astrue*,

628 F.3d 346, 353 (7th Cir.2010).

The Commissioner also argues that the ALJ explained that postural limitations were

unsupported by the record showing that Plaintiff maintained normal range of motion throughout

her spine and lower back. This is a mischaracterization of the record, as treatment notes

consistently document painful range of motion in lumbar spine and tenderness in cervical spine.

(AR 656, 703, 709, 721, 730, 736, 750, 775, 781, 786, 792, 799, 803, 808.) *Golembiewski v.*

*Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (An ALJ's mischaracterization of the record

compromises his decision.)

The Commissioner also refers to Plaintiff's ability to perform daily activities. But daily activities such as personal care and cooking can be performed at one's own pace with change in positions when needed. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter and is not held to a minimum standard of performance, as she would be by an employer.) In her function report, Plaintiff described experiencing difficulties dressing herself, caring for her hair and shaving. (AR 359.) She had difficulty cooking due to pain. (AR 360.) She could do light chores for 10 to 20 minutes at a time and her husband completed majority of the chores including yardwork, vacuuming, laundry, dishes, etc. (AR 360.) She could drive only for short distances. (AR 361.) The ALJ did not explain how he considered that Plaintiff could have performed daily activities on her own schedule, and with frequent breaks and that she would not be afforded such latitude in competitive work environment. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998) ("[the ALJ's] opinion fails to build a bridge from the evidence to the conclusion and is thus analytically inadequate – in a word, unreasoned – we cannot uphold his decision.").

The Commissioner declined to address Plaintiff's argument that the ALJ failed to explain how Plaintiff's conservative care was related to her need to alternate positions. The Commissioner's silence suggests that he has no appropriate response to Plaintiff's argument*. See, e.g., Nagel v. Colvin*, 2016 WL 1104840 *4 (N.D. Ind., Mar.22, 2016) (The strength of Plaintiff's argument is bolstered by the Commissioner's failure to respond to this argument.)

As the ALJ failed to build an accurate and logical bridge from the evidence to his RFC

assessment, remand is required on this issue.

Next, Plaintiff contends that a review of the ALJ's decision shows that he failed to properly evaluate Plaintiff's mental impairments. Plaintiff has been treating for depression for more than three decades and takes Paxil and Lamictal. (AR 122.) At the request of the Agency, Plaintiff underwent a psychological consultative examination in October 2016. (AR 544.) She described a history of depression and consultative examiner L. Schultz, Psy.D. diagnosed major depressive disorder, recurrent. (AR 546.) In a function report from January 2017, Plaintiff stated that her husband motivated her to take care of personal needs and grooming. (AR 360.) She had difficulty cooking due to pain. (AR 360.) She explained that her conditions affected her ability to complete tasks, follow instructions and concentrate. (AR 363.) During the hearing, Plaintiff testified that her mental health symptoms included mood swings, crying outbreaks and difficulty concentrating. (AR 136.)

At step two of the sequential evaluation process, the ALJ found that Plaintiff's major depressive disorder was a non-severe impairment and that she suffered from no limitations in any of the four functional areas: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace and adapting or managing oneself. (AR 13-15.) The ALJ credited the opinions of the State agency psychological consultants in reaching this finding. (AR 14.) However, J. Larsen, Ph.D., the State agency psychologist at the reconsideration level opined that Plaintiff had mild limits in understanding, remembering and applying information and concentrating, persisting or maintaining pace. (AR 165.) Thus, while the ALJ purportedly credited the State agency opinions, he actually rejected them, for he found no limitations in areas where the State agency psychologists found mild limitations without any

explanation. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (An ALJ may not selectively cite from a consultative psychologist's opinion without explaining why she rejects particular proposed functional restrictions but accepts other proposed functional restrictions.), *accord McKinzey v. Astrue*, 641 F.3d 884, 891-92 (7th Cir. 2011). The ALJ impermissibly substituted his lay opinion for the opinions of the State agency psychologist who was specifically tasked with evaluating Plaintiff's ability to understand, remember and apply information and concentrate, persist or maintain pace. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (An ALJ may not reject a medical opinion without relying on a contrary medical opinion or medical authority.")

As Plaintiff notes, it is unclear if the ALJ was not aware that the State agency psychologist found mild mental health limits or if the ALJ ignored them and made an alternative finding. This error is not harmless because the ALJ is required to consider the effect of a claimant's non-severe impairments on her ability to work. *See* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe.""); 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (An ALJ is required to include all functional limitations in her assessment of a claimant's RFC and must account for limitations that non-severe impairments produce.). Thus, Plaintiff argues that the ALJ erred in failing to find, based on the uncontradicted State agency opinion, that Plaintiff suffered mild restriction in concentration, persistence or pace and then again erred in failing to include those limitations in his assessment of Plaintiff's RFC. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir.2003) (indicating that the ALJ must consider the aggregate effect of all alleged

impairments- "including those impairments that in isolation are not severe.").

Clearly, non-severe mental impairments causing even mild limitations in concentrating, persisting or maintaining pace can impact an individual's ability to perform past skilled work, such as the appointment clerk work Plaintiff performed. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). *Winfield v. Commissioner of Social Sec.*, 2013 WL 692408, *3 (N.D. Ind. 2013): "I think that Winfield is pretty clearly right on at least one of her claims—that the ALJ fundamentally erred when he failed to consider her non-severe mental impairments when assessing her residual functional capacity. Therefore, I have no choice but to remand this case back to him." The Court went on to find:

> Even a mild impairment can put a disproportionately greater strain on a person who concurrently is suffering from a more severe affliction. *See Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir.2010); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). It's the combination of the maladies that must be considered, and "[a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (emphasis added); *accord Golembiewski*, 322 F.3d 918.

*Winfield*, at *4-5. *Accord Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874 at *1 (N.D. Ind. May 30, 2013):

> [T]he ALJ here concluded that Underwood's mental limitations, stemming from mild depression and pain, were, in fact, credible. On these facts, the ALJ's decision to limit Underwood to unskilled work, rather than including her mental limitations into her RFC specifically or incorporating them properly by proxy, was in error.

*See also Cannon v. Berryhill*, 1:18CV203, 2019 WL 1011872, at *7–8 (N.D. Ind. Mar. 4, 2019) ("However, even assuming, arguendo, that Plaintiff's depression did not individually warrant a severity finding, remand is still necessary as the ALJ failed to consider what effect Plaintiff's "longstanding depression" had on her other "severe" impairments (*e.g.*, fibromyalgia, a back

condition, a neck condition, and obesity.........Clearly, the ALJ's analysis is critically flawed in that he did not consider whether and how Plaintiff's depression may relate to her other severe impairments...... A large component of Plaintiff's claim is premised on her pain, which inherently affects a person's mental functioning."); *Kinsey v. Berryhill*, No. 2:16-CV-69-PRC, 2017 WL 1101140, at *9 (N.D. Ind. Mar. 24, 2017); *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011; *Koswenda v. Astrue*, 2009 WL 958542, at *5 (N.D. Ill. Apr. 2, 2009).

In response, the Commissioner asserts that the ALJ properly evaluated Plaintiff's mental impairments. The Commissioner argues that the "only portion" of the State agency psychological consultant's opinion that the ALJ gave great weight was the opinion that Plaintiff's mental impairment was non-severe. The Commissioner reasons that the ALJ did not purport to give great weight to the State agency psychological consultant's finding that Plaintiff had mild limits in understanding, remembering and applying information and concentrating, persisting or maintaining pace. However, the Commissioner's contention amounts to impermissible post-hoc rationalization because the ALJ never stated that he rejected the State agency psychological consultant's finding that Plaintiff had mild limits in understanding, remembering and applying information and concentrating, persisting or maintaining pace. (AR 14-15, 165.). *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) ("We are particularly concerned about the *Chenery* violations committed by the government because it is a recurrent feature of the government's defense of denials of social security disability benefits, as this court has noted repeatedly").

Moreover, when the ALJ determined that Plaintiff had no limits in concentration, persistence or pace (AR 15), he impermissibly substituted his lay opinion for the opinions of the State agency psychologist (the only physician who opined regarding Plaintiff's mental functional

limits) who was specifically tasked with evaluating Plaintiff's ability to understand, remember and apply information and concentrate, persist or maintain pace. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (An ALJ may not reject a medical opinion without relying on a contrary medical opinion or medical authority.")

The Commissioner also contends that the ALJ adequately explained the basis for finding of no limitations in concentrating, persisting, or maintaining pace. But a review of the ALJ's decision reveals that he failed to properly address Plaintiff's testimony about her mental health issues: Plaintiff testified that her depressive symptoms started 30 years ago and she was prescribed Paxil and Lamictal. (AR 122.) She explained that her mental health symptoms included mood swings, crying outbreaks and difficulty concentrating. (AR 136.) The ALJ however, did not address this aspect of Plaintiff's testimony while evaluating her depression and erred by failing to include any mental health limitations in his assessment of Plaintiff's RFC (AR 14-15). SSR 96-8p (the RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions cannot reasonably be accepted as consistent with the medical and other evidence.); SSR 16-3p ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions."). Thus, the ALJ erred in failing to find, based on the uncontradicted State agency opinion and Plaintiff's testimony, that Plaintiff suffered mild restriction in concentration, persistence or pace and then again erred in failing to include those limitations in his assessment of Plaintiff's RFC. *Golembiewski* , 322 F.3d 918 (indicating that the ALJ must consider the aggregate effect of all alleged impairments- "including those impairments that in isolation are not severe."); *Verlee v.*

20

*Astrue*, 1:12-CV-45-TLS-RBC, 2013 WL 1760810, at *3 (N.D. Ind. Apr. 24, 2013); *Jones v. Astrue*, 2:12-CV-00143, 2013 WL 816170, at *7 (N.D. Ind. Mar. 4, 2013). The ALJ's error was not harmless because non-severe major depressive disorder causing even mild limitations in concentrating, persisting or maintaining pace would affect an individual's ability to perform past skilled work, such as her job as an appointment clerk. *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir.2010) ("Even a non-severe impairment can put a disproportionately greater strain on a person who concurrently is suffering from a more severe affliction"); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). *Accord Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874 at *1 (N.D. Ind. May 30, 2013).

The Commissioner also refers to the ALJ's finding that Plaintiff's concentration varied based on her pain level. But a large component of Plaintiff's claim is premised on her pain, which affected her mental functioning. The ALJ had to consider the effect of Plaintiff's longstanding depression on her other severe impairments such as lumbar stenosis, radiculopathies, disc herniation, and post-laminectomy syndrome; status post left ankle and foot derangement; right carpal tunnel syndrome; and, multilevel cervical spondylosis. *Cannon v. Berryhill*, 1:18CV203, 2019 WL 1011872, at *7–8 (N.D. Ind. Mar. 4, 2019). Accordingly, remand is warranted.

Next, Plaintiff argues that the ALJ committed multiple errors in evaluating Plaintiff's symptoms. Plaintiff contends that in evaluating Plaintiff's symptoms, the ALJ stated that her allegations were "not entirely consistent with the medical evidence and other evidence in the record." (AR 19.) But, the "not entirely consistent" standard implies that the ALJ used a clear and convincing evidence standard and an ALJ must decide a case based upon a preponderance of the evidence standard. An ALJ must supply sufficient detail in his analysis that permits the Court to

conduct meaningful judicial review and to trace the path of the ALJ's reasoning. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

Here, however, the ALJ's decision contains no discussion of which allegations he found consistent with the record. (AR 19-23.) In finding that Plaintiff's subjective allegations were not entirely consistent with the evidence, the ALJ presumed that, for the ALJ to credit any of Plaintiff's subjective allegations that addressed her limitations and restrictions, her statements needed to be fully consistent with evidence. *See* SSR 16-3p ("In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record"); *Ralston v. Saul*, 3:18-CV-996-PPS, 2019 WL 5558798, at *2–4 (N.D. Ind. Oct. 29, 2019) ("It is not enough to simply say that the evidence conflicts with the claimant's testimony; the ALJ must show how it conflicts."); *Whyte v. Saul*, 18-CV-1274, 2019 WL 5541412, at *6 (E.D. Wis. Oct. 25, 2019) ("The ALJ has failed to build an accurate and logical bridge between the evidence and his subjective-symptom evaluation."). This contradicts the Commissioner's own regulations as well as Seventh Circuit case law which require that an ALJ apply the preponderance of the evidence standard. *See also Minger v. Berryhill*, 307 F. Supp.3d 865, 872 (N.D. Ill. 2018) ("…however, the ALJ's boilerplate indicates that he will be assessing the claimant's symptoms under a different standard – "entirely consistent"– than required in the regulations – "reasonably . . . accept[able] as consistent); *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) ("[T]he ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination.").

The ALJ also cited Plaintiff's ability to groom herself, cook dinner, perform light

housework, etc. to undermine the severity of her allegations. (AR 18.) However, the ALJ simply summarized Plaintiff's daily activities without connecting the performance of any specific daily activity with a greater functional ability than Plaintiff alleged. *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 393 (7th Cir. 1992). Limited daily activities fail to provide any meaningful and reviewable information about what evidence the ALJ considered in evaluating a claimant's symptoms. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (claimant's daily living activities "are fairly restricted (e.g., washing dishes, helping his children prepare for school, doing laundry, and preparing dinner) and not of a sort that necessarily undermines or contradicts a claim of disabling pain"). Moreover, the ALJ never considered the qualifications on Plaintiff's daily activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("an ALJ cannot disregard a claimant's limitations in performing household activities"); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) ("The ALJ ignored Craft's qualifications as to he carried out those activities . . . . Each activity left him exhausted."). In her function report, Plaintiff described experiencing difficulties dressing herself, caring for her hair and shaving. (AR 359.) She had difficulty cooking due to pain. (AR 360.) She could do light chores for 10 to 20 minutes at a time and her husband completed majority of the chores including yardwork, vacuuming, laundry, dishes, etc. (AR 360.) She could drive only for short distances. (AR 361.) The ALJ did not explain if/how he considered that Plaintiff could have performed daily activities on her own schedule, and with frequent breaks and that she would not be afforded such latitude in competitive work environment. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)

The ALJ further remarked that Plaintiff received conservative care for her back pain. (AR 19.) However the ALJ failed to explain what was conservative about the two lumbar surgeries

Plaintiff underwent. Moreover, it was error for the ALJ to rely on his perception of a lack of aggressive treatment absent evidence of accepted appropriate treatment. *Myles*, 582 F.3d 677-78. The ALJ did not explain what treatment Plaintiff should have received and thus, the ALJ's finding constituted unfounded medical speculation. SSR 86-8; *accord White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence").

In addition, the ALJ failed to explain why Plaintiff's physicians would have recommended surgeries and prescribed numerous medications unless they believed that Plaintiff suffered the debilitating symptoms that she alleged. *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014). Based on the two surgeries that Plaintiff underwent, the ALJ's finding that Plaintiff received only conservative care was an impermissible mischaracterization of the record, for there really was no more aggressive treatment that Plaintiff could have pursued than surgery. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (Mischaracterization of the record compromises an ALJ's decision.)

Additionally, Plaintiff testified that her medications made her feel tired and not up to par. (AR 132.) SSR 16-3p (The ALJ was required to consider the medications that Plaintiff's physicians prescribed as well as any side effects that those medications produced.) The ALJ did not explain if or how he considered the side effects that Plaintiff experienced and how those side effects either supported or contradicted her subjective allegations. *Accord Black v. Colvin*, 2015 WL 1005405, *10 (N.D. Ind. 2015); *Kinsey-McHenry v. Colvin*, 2013 WL 5460161, *10 (N.D. Ind. 2013); *Dross-Swart v. Astrue*, 872 F. Supp.2d 780, 798 (N.D. Ind. 2012). The ALJ's error was not harmless because the VE testified that an administrative secretary could be off-task no

greater than five percent of workday (AR 146.). *Spiva*, 628 F.3d 353. If, due to medication side effects, Plaintiff was so tired that she was off-task in excess of this time, she could not have sustained competitive employment.

Moreover, the State agency physicians, R. Fife, M.D. and J. Corcoran, M.D., found that Plaintiff's statements about the intensity, persistence and functionally limiting effects of the symptoms were substantiated by the objective medical evidence. (AR 153, 166.) According to SSR 16-3p, an ALJ must consider the findings of the State agency physicians while evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. The ALJ, however, did not explain why, if the State agency physicians who reviewed Plaintiff's medical history, found that her subjective allegations were consistent with objective evidence, the ALJ reached opposite conclusion. *Parker*, 597 F.3d 922.

In response, the Commissioner maintains that the ALJ properly evaluated Plaintiff's subjective complaints. The Commissioner contends that Plaintiff's ability to perform daily activities made her allegations not fully believable. However, the Commissioner failed to address why the ALJ did not factor in Plaintiff's limitations in performing daily activities. Courts have repeatedly found fault with decisions where an ALJ noted that the claimant could perform daily activities but failed to examine the physical or mental consequences of performing those activities and/or the claimant's need for assistance or modifications. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("an ALJ cannot disregard a claimant's limitations in performing household activities"); *Greenfield v. Berryhill*, 1:17-CV-328-TLS, 2018 WL 1603380, at *5 (N.D. Ind. Apr. 3, 2018); *Kubiszewski v. Berryhill*, 3:17-CV-565 JD, 2018 WL 3491246, at *3 (N.D. Ind. July 20, 2018). Without acknowledging the differences between the demands of daily

activities and those of a full-time job, an ALJ is not entitled to use successful performance of life activities as a basis to determine that a claimant's claims of a disabling condition are not believable. *Ghiselli v. Colvin*, No. 14-2380, 2016 WL 4939535, at *5 (7th Cir. Sept. 16, 2016). Here, in her function report, Plaintiff described experiencing difficulties dressing herself, caring for her hair and shaving. (AR 359.) She had difficulty cooking due to pain. (AR 360.) She could do light chores for 10 to 20 minutes at a time and her husband completed majority of the chores including yardwork, vacuuming, laundry, dishes, etc. (AR 360.) She could drive only for short distances. (AR 361.) The Commissioner's silence suggests that he has no appropriate response to Plaintiff's argument. *See, e.g., Kelly v. Colvin*, 2015 WL 4730119, *5 (N.D. Ill. 2015).

The Commissioner also asserts that Plaintiff received good relief from physical therapy, pain medications, etc. But any improvement that a claimant experiences is relevant only to the extent that the improvement restores a claimant's capacity to engage in substantial gainful activity. *Allensworth v. Colvin*, 814 F.3d 831, 834 (7th Cir. 2016); *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014); *Tate v. Long Term Disability Plan for Salaried Employees of Champion*, 545 F.3d 555, 561 (7th Cir. 2008). Plaintiff did not testify that her pain was relieved by medication- she described experiencing chronic pain in her neck, lower back and legs and rated her pain as a 7 on a scale of 1 to 10. (AR 121, 128.) The Commissioner cited no evidence that established that, with pain that rated a 7 out of 10, Plaintiff could have performed full-time work at the sedentary exertional level. *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (holding ALJs must build an accurate and logical bridge from the evidence to their conclusions).

Lastly, the Commissioner declined to respond to Plaintiff's argument that the ALJ's failed to account for the medication side-effects that Plaintiff experienced. *See Embry v. Barnhart*,

2003 WL 21704425, *10 (N.D. Ill. Jul. 18, 2003) (finding that the ALJ failed to explain why he gave greater weight to a non-examining consultant's report over an examining physician's report and reversing, noting the Commissioner failed to address the argument in her brief). Plaintiff testified under oath that her medications made her feel tired and not up to par. (AR 132.) The ALJ did not explain if or how he considered the side effects that Plaintiff experienced and how those side effects either supported or contradicted her subjective allegations. SSR 16-3p (The ALJ was required to consider the medications that Plaintiff's physicians prescribed as well as any side effects that those medications produced.); *Black v. Colvin*, 2015 WL 1005405, *10 (N.D. Ind. 2015). The ALJ's error was not harmless because the VE testified that an administrative secretary (the job the ALJ determined that Plaintiff was capable of performing) could be off-task no greater than five percent of workday (AR 146). *Spiva*, 628 F.3d 353. Thus, if due to medication side effects, Plaintiff was so tired that she was off-task in excess of five percent of the workday, she could not have sustained competitive employment. Thus, remand is also warranted on this issue.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

Entered: April 6 , 2020.

s/ William C.  Lee
William C. Lee, Judge
United States District Court